IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KAREN KIRKER CORREA,

    Plaintiff,

v.                                                          1:16-cv-01314-LF

NANCY A. BERRYHILL,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Karen Kirker Correa's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 19), which was fully briefed on June 20, 2017. *See* Docs. 21, 22, 23. The parties consented to my entering final judgment in this case. Docs. 5, 17, 18. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge's ("ALJ's") credibility assessment is not supported by substantial evidence. I therefore GRANT Ms. Correa's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Correa was born in 1959, and completed a bachelor's degree in English and a master's degree in counseling. AR 199, 477–78.[4] She worked at Western New Mexico University for approximately 18 years—as an academic advisor and then as a Director of Special Needs in the Office of Disability. AR 45–49, 199, 477. Ms. Correa filed an application for disability insurance benefits on January 29, 2013—alleging disability since January 1, 2010 due

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 13-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

to fibromyalgia. AR 160–66, 198. The Social Security Administration ("SSA") denied her claim initially on October 17, 2013. AR 102–05. The SSA denied her claims on reconsideration on April 4, 2014. AR 111–15. Ms. Correa requested a hearing before an ALJ. AR 116–17. On December 30, 2015, ALJ Eric Weiss held a hearing. AR 38–74. ALJ Weiss issued his unfavorable decision on February 3, 2016. AR 19–37.[5]

At step one, the ALJ found that Ms. Correa had not engaged in substantial, gainful activity since January 1, 2010, her alleged onset date. AR 24. At step two, the ALJ found that Ms. Correa suffered from the following severe impairments: inflammatory arthritis, fibromyalgia, and obesity. *Id.* At step three, the ALJ found that none of Ms. Correa's impairments, alone or in combination, met or medically equaled a Listing. AR 27–28. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Correa's RFC. AR 28–31. The ALJ found Ms. Correa had the RFC to

> lift 20 pounds occasionally, lift and carry 10 pounds frequently, and push and pull the same. She is able to walk and stand for six hours per eight-hour workday and sit for six hours per eight-hour workday, with normal breaks. She is able to occasionally . . . climb ramps and stairs but never ladders, ropes, and scaffolds. She is able to occasionally stoop, crouch, kneel, and crawl. She is able to frequently handle and finger with her bilateral upper extremities. Finally, she must avoid more than occasional exposure to extreme cold and unprotected heights.

AR 28.

At step four, the ALJ concluded that Ms. Correa was able to perform her past relevant work as an educational advisor, and therefore was not disabled. AR 31–32. On March 21, 2016, Ms. Correa requested review of the ALJ's unfavorable decision by the Appeals Council. AR 17–

---

[5] Ms. Correa filed a subsequent application for disability insurance benefits with an alleged onset date of February 4, 2016. Doc. 22 at 4. The SSA approved this application on March 28, 2017. *Id.*

18. On October 6, 2016, the Appeals Council denied the request for review. AR 1–6. Ms. Correa timely filed her appeal to this Court on December 1, 2016. Doc. 1.[6]

## IV. Ms. Correa's Claims

Ms. Correa raises four arguments for reversing and remanding this case: (1) the ALJ failed to properly evaluate the medical opinion of examining consultant Dr. Roger Felix; (2) the ALJ failed to properly evaluate the medical opinion of examining psychological consultant Dr. Rod J. Merta; (3) the ALJ failed to make a proper credibility finding; (4) the ALJ improperly delegated to the vocational expert responsibility for determining the physical and mental demands of Ms. Correa's past relevant work. Because I remand based on the ALJ's failure to make a proper credibility finding, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Analysis

Ms. Correa argues that the ALJ gave "weak and insufficient" reasons for finding her not credible. Doc. 19 at 9. She argues that the medical evidence and the statements cited by the ALJ do not constitute substantial evidence for the ALJ's credibility finding. *Id.* at 9–11. The Commissioner counters that the ALJ gave several valid reasons, supported by substantial evidence, for discounting Ms. Correa's subjective statements. Doc. 21 at 11–12. For the reasons discussed below, I agree with Ms. Correa, and find that the ALJ's credibility findings are not supported by substantial evidence.

In considering a claimant's symptoms, the ALJ must follow a two-step process: (1) the ALJ must determine whether the claimant's medically determinable impairments could

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 3.

5

reasonably be expected to produce a claimant's symptoms, and, if so, (2) the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.  SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).[7]  "[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id*.  The ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record." *Id*.  The ALJ's decision must be well-reasoned, and the ALJ must draw "appropriate inferences and conclusions" about the credibility of the claimant's statements.  *Id*. at *4–*5.

At the first step of considering Ms. Correa's symptoms, the ALJ found that her medically determinable impairments reasonably could be expected to produce her symptoms.  AR 29.  At the second step, however, the ALJ found that her "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms [were] not credible for the reasons explained in this decision." *Id.*  After discussing some of the medical records documenting Ms. Correa's obesity, inflammatory arthritis, and fibromyalgia, the ALJ wrote a single paragraph discussing how the objective medical evidence did not support Ms. Correa's statements about the functionally limiting effects of her symptoms:

> Despite this evidence, however, other evidence suggests that these impairments are not as limiting as the claimant alleges.  The claimant indicated in both December 2011 and December 2013 that Prednisone helped to alleviate her symptoms (Exs. 3F at 24, 11F at 4).  In January 2014, she indicated that she was comfortable enough to take Prednisone only when she experienced flares (Ex. 12F

---

[7] SSR 96-7p was superseded by SSR 16-3p effective March 28, 2016.  *See* SSR 16-3p, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017) (clarifying that Court should apply the rules that were in effect at the time the SSA issued the decision under review).  The parties agree that SSR 96-7p applies to this case.  Docs. 19 at 9, 21 at 12 n.3, 22 at 3.

6

at 6). In March 2014, she indicated that she was doing well despite a pain flare
(Ex. 18F at 36). Notably, she testified that she currently takes Prednisone only
once every two weeks, approximately (HT). Moreover, she has exhibited normal
reflexes (Exs. 10F at 6, 16F at 24). She has demonstrated a good grip, as well
(Ex. 16F at 24). Importantly, she has exhibited a lack of joint tenderness upon
examination (Ex. 16F at 24). Finally, as is discussed above, she has exhibited full
strength and range of motion on several occasions.

AR 30.

Ms. Correa faults the ALJ for finding her less credible because she had normal reflexes, good grip, no joint tenderness, and full strength and range of motion "on several occasions." Doc. 19 at 10. Ms. Correa argues that finding her less credible on this basis shows that the ALJ "did not understand the disease of fibromyalgia." *Id*. I agree.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (S.S.A. July 25, 2012). Under SSR 12-2p, the objective medical evidence required to prove a medically determinable impairment ("MDI") of fibromyalgia can be assessed using the 1990 ACR Criteria for the Classification of Fibromyalgia, which state that the ALJ may find a claimant has an MDI of fibromyalgia if the claimant has all three of the following:

> (1) A history of widespread pain that has persisted for at least three months (the pain may fluctuate and not always be present);
> (2) At least 11 positive tender points on physical examination (found on all quadrants of the body);
> (3) Evidence that other disorders that could cause the symptoms or signs were excluded.

*Id.* at *2–*3.[8] Fibromyalgia symptoms "wax and wane," and a person with fibromyalgia may have both "bad days and good days." *Id*. at *6. Because the symptoms of fibromyalgia

---

[8] The ALJ also may find an MDI based on the 2010 ACR Preliminary Diagnostic Criteria. *See* SSR 12-2p, 2012 WL 3104869, at *3. The ALJ does not appear to have relied on these criteria in this case.

7

fluctuate, both consultative examiners and ALJs should consider a "longitudinal record" when assessing a claimant's RFC. *Id.* at *5–*6.

Fibromyalgia is not diagnosed through objective findings. *Gilbert v. Astrue*, 231 F. App'x 778, 783–84 (10th Cir. 2007) (unpublished); *Moore v. Barnhart*, 114 F. App'x 983, 990–91 (10th Cir. 2004) (unpublished). Instead, the disease "is diagnosed entirely on the basis of patients' reports and other symptoms." *Moore*, 114 F. App'x at 991 (internal citation and quotation omitted). "The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity." *Priest v. Barnhart*, 302 F. Supp. 2d 1205, 1213 (D. Kan. 2004) (internal citation and quotation omitted); *see also Malloy v. Astrue*, 604 F. Supp. 2d 1247, 1249 (S.D. Iowa 2009) (ALJ erred in rejecting doctor's opinion on the basis that there was "no evidence that muscle atrophy, decreased range of motion, muscle weakness or loss of sensation," as these are not necessarily indicia of fibromyalgia.); *see also Moore*, 114 F. App'x at 991–92 (internal citation and quotation omitted) (Noting that people with fibromyalgia "usually look healthy. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, although there may be tenderness on palpation. In addition, muscle strength, sensory functions, and reflexes are normal despite the patient's complaints of acral numbness.").

Further, fibromyalgia is "a variable disorder, which means that symptoms can be different from person to person." Practical Pain Management, Dr. Gary W. Jay.[9] For doctors assessing fibromyalgia patients, "[p]hysical examination is unremarkable except that specific, discrete areas of muscle (tender points) often are tender when palpated." MERCK MANUAL

---

[9] https://www.practicalpainmanagement.com/patient/conditions/fibromyalgia/exams-tests-diagnose-fibromyalgia (last accessed Mar. 15, 2018).

PROFESSIONAL VERSION, Fibromyalgia, Symptoms and Signs.[10] Indeed, doctors are advised to "[s]uspect fibromyalgia when generalized pain and tenderness and fatigue are unexplained or out of proportion to physical and laboratory findings." *Id.*

Given that the symptoms of fibromyalgia are entirely subjective and highly variable, and physical examinations of fibromyalgia patients are often "unremarkable," the Court fails to see how the ALJ's findings that Ms. Correa had normal reflexes, a good grip, lack of joint tenderness, and full strength and range of motion "on several occasions" undermines Ms. Correa's credibility. The Commissioner argues that "although the existence or severity of fibromyalgia may not be determinable by objective medical tests, [the Tenth Circuit] has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed." Doc. 21 at 13 (quoting *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (unpublished)). The Court does not find *Tarpley* persuasive. While there may be cases in which a fibromyalgia patient's reported limitations can be objectively analyzed, that case does not present itself here. Ms. Correa reported limitations in her ability to "lift, carry, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, remember things, complete tasks, sleep, concentrate, understand things, follow instructions, use her hands, and get along with others." AR 29. Her credibility about these limitations could be undermined by objective medical evidence directly contradicting these limitations (for example, an ALJ might find her reported limitation in her ability to walk less credible if repeated office treadmill tests showed no limitation; an ALJ might find her reported limitation in her ability to lift and carry less credible if there were physical therapy records showing no apparent difficulties with these tasks).

---

[10] https://www.merckmanuals.com/professional/musculoskeletal-and-connective-tissue-disorders/bursa,-muscle,-and-tendon-disorders/fibromyalgia (last accessed Mar. 15, 2018).

Here, however, in finding Ms. Correa less credible because she had normal reflexes, a good grip, no joint tenderness, and full strength and range of motion, the ALJ essentially is requiring objective proof that she has fibromyalgia, a disease which is not diagnosed through objective findings. This is error. *See Gilbert*, 231 F. App'x at 784 ("the lack of objective test findings noted by the ALJ is not determinative of the severity of her fibromyalgia"). While some people with fibromyalgia may have some of these symptoms, these symptoms are not diagnostic criteria of fibromyalgia. People with fibromyalgia still can be limited by pain and fatigue without showing any of these symptoms on physical examination. The fact that Ms. Correa did not exhibit these symptoms when examined does not make her less credible. The ALJ erred in finding that this medical evidence undermined Ms. Correa's credibility.

The ALJ also erred in finding that Ms. Correa's medication use was not consistent with her reported limitations.[11] An ALJ can consider a "longitudinal record of any treatment and its success or failure, including any side effects of medication." SSR 96-7p, at *7.

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications . . . may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

*Id*. The ALJ found Ms. Correa less limited than she alleged for "tak[ing] Prednisone only when she experienced flares." AR 30.[12] There is no evidence, however, that Ms. Correa's medical

---

[11] In assessing the intensity and persistence of a claimant's symptoms, the ALJ should assess what precipitates and aggravates the claimant's symptoms, what medications, treatments or other methods the claimant uses to alleviate them, and how the symptoms may affect the claimant's pattern of daily living. 20 C.F.R. § 404.1529(c)(3) (effective June 13, 2011 through March 26, 2017).

10

providers instructed her to take Prednisone more frequently. AR 363, 367, 403, 568, 571, 573. In fact, Ms. Correa's treating physician, Dr. Jennifer Acosta, advised her to use as little prednisone as possible: "I have given her a rx for 5mg to take prn ["as needed"]—she is well aware to use as little as we can get away with—1-2-3 day bursts may suffice—she will see." AR 761.[13]

The ALJ concluded that prednisone alleviated Ms. Correa's symptoms, and faults Ms. Correa for not taking prednisone more frequently. The ALJ claims that Ms. Correa indicated in both December 2011 and December 2013 that prednisone alleviated her symptoms. AR 30. At her December 2011 visit, however, Ms. Correa actually said that "prednisone did not seem to help much." AR 367; *see also* AR 371 (12/2/2011 Ms. Correa reported prednisone did not help much), AR 362 (8/27/2012 Ms. Correa reported prednisone helped some, but did not provide complete relief), AR 355 (9/21/2012 Ms. Correa reported prednisone was not providing any relief and that she was so uncomfortable she had to quit her job). At a December 16, 2013 visit, Ms. Correa reported that prednisone and aloe were helping, but asked to increase her Cymbalta dose to help with her remaining discomfort. AR 530. Thus, while there is some evidence in the record that prednisone helped at times, there is no evidence that prednisone provided sustained

---

[12] The Commissioner asserts that Ms. Correa reported "taking medication only during flares." Doc. 21 at 12. This statement is not correct. Ms. Correa reported that she only took *prednisone* during flares, but the record shows that Ms. Correa took several other medications for her fibromyalgia on a more continuous basis—including amitriptyline, Cymbalta, and gabapentin. AR 245.

[13] A patient taking prednisone should "[t]ake this medicine exactly as directed by [his/her] doctor. Do not take more of it, do not take it more often, and do not take it for a longer time than your doctor ordered. To do so may increase the chance for unwanted effects." Mayo Clinic, Prednisone (Oral Route), available at https://www.mayoclinic.org/drugs-supplements/prednisone-oral-route/proper-use/drg-20075269 (last accessed March 20, 2018). Long term use of prednisone increases the risk of side effects and adrenal problems. https://www.mayoclinic.org/drugs-supplements/prednisone-oral-route/precautions/drg-20075269 (last accessed March 20, 2018).

11

relief of Ms. Correa's symptoms. At the time of the hearing, Ms. Correa testified that she was taking prednisone for flares as needed, approximately every two weeks. AR 62. Contrary to the ALJ's assertion, this evidence does not show that Ms. Correa's symptoms were well controlled by medication or that she was not credible.[14]

Finally, the ALJ asserts that Ms. Correa is less limited than she alleges because "[i]n March 2014, she indicated that she was doing well despite a pain flare." AR 30 (citing AR 731). The treatment record for that date actually says that Ms. Correa reported she was "[d]oing pretty well the[s]e days, though had a pain flare in back and hands recently." AR 731. Thus, the record does not show that she was doing well *during* the pain flare. In any case, the fact that Ms. Correa reported she was "doing well" on one record does not make her less credible. Fibromyalgia symptoms "wax and wane," and a person with fibromyalgia may have both "bad days and good days." SSR 12-2p, 2012 WL 3104869, at *6. Because the symptoms of fibromyalgia fluctuate, both consultative examiners and ALJs should consider a "longitudinal record" when assessing a claimant's RFC. *Id.* at *5–*6.

The ALJ also found Ms. Correa not credible based on her statements. However, the ALJ's analysis of the claimant's statements is not "well-reasoned," and the ALJ failed to draw "appropriate inferences and conclusions" about the credibility of the claimant's statements from the record evidence he cited. *Id*. at *4–*5. Therefore, the Court finds that the ALJ's credibility findings are not supported by substantial evidence, and remand is required.

---

[14] In addition, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p, at *8. For example, a claimant "may not take prescription medication because the side effects are less tolerable than the symptoms." *Id*. The ALJ failed to consider the side effects of the medication as a possible reason Ms. Correa did not take it more frequently. Ms. Correa reported that prednisone made her hungry and aggressive. AR 230, 245.

The ALJ's analysis of the credibility of Ms. Correa's statements is as follows:

> Some of the claimant's statements undermine the credibility of her allegations. The claimant stated that she uses a cane; however, she did not indicate that it had been prescribed to her (Exs. 5E at 8, 8E at 8), and the medical evidence does not show that it was. The claimant wrote in her January 2014 Function Report that she struggled with writing (Ex. 8E at 9). However, she completed the Function Report by hand. She indicated in her February 2013 and January 2014 Function Reports that she needed to rest for 15 to 20 minutes after walking for 30 minutes (Exs. 5E at 7, 8E at 7). However, she alleged in April 2014 that she needed to rest for only three to five minutes after shopping for 30 minutes (Ex. 9E at 4). Notably, at the hearing, the claimant testified that she did not know for how long or how far she can walk (HT). Moreover, the claimant stated that she could stand for an hour (Ex. 7F at 3). These statements undermine the credibility of the claimant's allegations.

AR 30.

It is unclear to the Court why the ALJ found Ms. Correa less credible because she stated that she uses a cane. In her function reports, Ms. Correa stated that she used a cane occasionally "to stand up after sitting a long period of time." AR 224, 241. The ALJ seems to fault Ms. Correa solely on the basis that the cane was not prescribed for her. However, "SSR 96–9p does not require that the claimant have a prescription for the [cane] in order for that device to be medically relevant to the calculation of her RFC." *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009) (unpublished). "The adjudicator must always consider the particular facts of a case" in determining whether a cane is medically required. SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). The ALJ erred in finding Ms. Correa less credible because the cane was not prescribed.[15]

---

[15] The Commissioner attempts to bolster the ALJ's credibility findings by pointing to other records showing that Ms. Correa did not use a cane. *See* Doc. 21 at 12–13. The ALJ did not cite these records in his credibility finding, however, and "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007).

The ALJ next found Ms. Correa less credible because she claimed that she struggled with writing, but completed her Function Report by hand. AR 30. The Commissioner asserts that "the ALJ reasonably found that [Ms. Correa's] ability to handwrite documents indicated that she had greater functioning that she claimed." Doc. 21 at 15. The Commissioner argues that the record shows that Ms. Correa could type on the computer, and the fact that she chose to handwrite her Function Report instead of typing it on the computer shows that she was not as limited as she alleged. Doc. 21 at 14–15. The Court disagrees. Ms. Correa reported that pain and stiffness limited both her ability to write by hand, and to use a computer. AR 236. She stated that "[m]y hands seem to be swollen and in pain every day. I struggle now with writing and using the mouse/keyboard on the computer." AR 242. Ms. Correa stated that she "struggled" with writing, not that she was completely unable to write. The ALJ did not ask Ms. Correa whether it was difficult for her to complete her Function Report by hand, or how long it took her. The Commissioner cites *Wilson* for the proposition that the ALJ "reasonably considered the consistency of a claimant's symptom testimony with other record evidence." Doc. 21 at 12 (citing *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010)). *Wilson*, however, is distinguishable. In *Wilson*, the ALJ found the claimant not credible because she "testified that she **could not** use her hands but also testified that she, at one point, wrote a county attorney a fifteen-page letter." *Wilson*, 602 F.3d at 1146 (emphasis added). The evidence the ALJ cited in *Wilson* clearly contradicts the claimant's testimony. Ms. Correa's testimony that she "struggles" with writing, however, is not contradicted merely by the fact that she wrote her Function Report by hand, as this evidence is not inconsistent.

The evidence the ALJ cites about Ms. Correa's abilities to walk, shop, and stand also is not inconsistent, and does not undermine her credibility. "The ALJ must not only consider the

important evidence, but his decision must demonstrate the path of his reasoning. The evidence in the case must lead logically to the fact-finder's conclusion." *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1095 (E.D. Wis. 2001) (internal citation omitted). "[T]he reasons given by the trier of fact [must] build an accurate and logical bridge between the evidence and the result." *Id*. (internal citation and quotation omitted). The ALJ failed to build a logical bridge between the evidence he cited and the conclusions he drew from it. There is no inconsistency between Ms. Correa's claim that she had to rest for 15 to 20 minutes after walking for 30 minutes, and only had to rest for 3 to 5 minutes after shopping for 30 minutes. Walking and shopping are not functionally equivalent. While shopping, a person may spend a good deal of time standing still, either while browsing or while standing in line.

Further, the ALJ mischaracterized Ms. Correa's statement that she did not know how long or far she could walk. AR 30. When the ALJ asked Ms. Correa how far she could walk, she replied:

> **Not too far** because I think I would be able to, except when as soon as I start, I start feeling that pressure on my lower back, besides my legs, but it's mostly the pressure in my lower back and it just feels like it's going to break. It's a weird pain in the lower back. And, in fact, the new doctor that I'm seeing, he's going to check me out for that, finally. But I had done a CT scan last year and it showed that I had that degenerative disc disease, but that's all I know, but — so, I need to get that checked out.

AR 57–58 (emphasis added). A short time later, Ms. Correa's attorney asked her if she had any idea how far she could walk, "either in distance or time, without stopping." AR 63–64. Ms. Correa started to respond, saying "I don't know. But I know that **right away**, I feel that pressure on my back and —." *Id.* Ms. Correa's attorney cut her off before she could finish her answer. Based on her testimony, Ms. Correa's ability to walk appears to have worsened since her last function report. She testified that she could not walk "too far" because she was experiencing

15

pressure and pain in her lower back "right away." AR 57–58, 63–64. Ms. Correa's testimony about her ability to walk is at best ambiguous. It was not specific enough to be inconsistent with her previous statements about her ability to walk.[16] Even if Ms. Correa's statements were inconsistent, a conclusion not drawn by the Court, the ALJ did not consider her other explanations for variations in her reported symptoms. The regulations caution ALJ's that

> the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

SSR 96-7p, 1996 WL 374186, at *5. This is particularly important because Ms. Correa suffers from fibromyalgia, an ailment that, by definition, waxes and wanes in severity. SSR 12-2p, 2012 WL 3104869, at *6.

## VI. Conclusion

The ALJ erred in not supporting his credibility findings with substantial evidence. The Court remands so that the ALJ can revisit his credibility determination. The Court does not reach Ms. Correa's other claimed errors, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19) is GRANTED.

---

[16] The ALJ does not explain how he reconciled Ms. Correa's statements about her limited ability to walk with his RFC finding that she could "walk and stand for six hours per eight-hour workday." AR 28.

16

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
 Presiding by Consent